No. 2283
Second Circuit

NAT SMILOW v. WALTER S. CAMP-
BELL, AND BANK OF OAK GROVE

(December 1, 1925, Opinion and Decree.)

(*Syllabus by the Editor.*)

1. Louisiana    Digest—Obligations — Par.
126, 153, 154.

Putting in default is a necessary prereq-
uisite under Articles 1912 and 1913 of
the Civil Code to the recovery of dam-
ages or to the rescission of a contract.

2. Louisiana    Digest—Obligations — Par.
155.

Article 1911 of the Civil Code provides how
the debtor may be put in default and
unless this act is followed one can-
not recover damages or have the con-
tract rescinded by Articles 1912 and
1913 of the Civil Code.

3. Louisiana    Digest—Obligations — Par.
126, 154, 178.

A contract which does not provide that
the party failing to comply with it,
by the mere act of his failure is in
default (nor is it one of those in which
the breach alone is by law declared
equivalent to a default), will not allow
a party to this contract to recover if
he has not put the other party in de-
fault under Article 1911 of the Civil
Code.

4. Louisiana Digest—Costs—Par. 10.

Where one, by a contract has placed his
money where it cannot be recovered
except by a law suit and the effect
of the suit is to also enable the other
contracting party to recover his money
which was similarly placed, the costs
should be equally divided between the
plaintiff and defendant for each re-
covers his own money.

Appeal from Seventh Judicial District
Court of Louisiana, Parish of West Car-
roll, Hon. John R. McIntosh, Judge.

This is a suit by which plaintiff agreed
to sell defendant a stock of drugs and fix-
tures and each made deposits of $500.00 to
bind the contract. Because neither party
had been put in default there was judg-
ment giving each party his $500.00 depos-
ited as earnest money and stipulated dam-
ages. Plaintiff appealed.

Judgment affirmed.

George Wesley Smith, of Rayville, attor-
ney for plaintiff, appellant.

D. J. Anders, of Rayville, attorney for
defendants, appellees.

CARVER, J.    By a written agreement,
signed August 23, 1924, plaintiff agreed
to sell and defendant, Campbell, to buy
a stock of drugs and fixtures, the sale
to be completed on September 10, 1924.
Each party deposited $500.00 in the Bank
of Oak Grove, the contract providing that
this was

" * * * as earnest money and as stip-
ulated damages to be paid to the one who
is ready and willing to close the sale and
transfer herein agreed to be made, provid-
ed the other is not ready and willing to
close and perfect said sale."

Plaintiff, alleging that defendant had
granted an extension of time for carrying
out the contract and had thereafter vio-
lated it by formally refusing to comply
with it notwithstanding frequent demand,
and alleging also that he had been formal-
ly put in default, brings this suit against
defendant and the Bank claiming the
thousand dollars on deposit.

Defendant denies that he granted an ex-
tension or violated the contract; asserts
that, on the contrary, plaintiff was not
ready to carry it out on September 10;
avers his own readiness to carry it out
on that day; and claims that by plaintiff's
failure to carry it out on that day he
forfeited his rights under the contract
and that defendant is therefore entitled
to the thousand dollars and reconvenes for
its recovery.

Plaintiff appeals from the decision of the
district judge, who rejected the demands
of both parties, holding that each was

entitled to withdraw his own deposit, and defendant in this court moves to amend the judgment by giving him the whole deposit.

The district judge does not state the reasons for his decision, but we think it correct for the reason that neither party ever put the other in default and this, according to Articles 1912 and 1913 of the Civil Code is a prerequisite to the recovery of damages or to the rescission of a contract.

These articles read as follows

"The effects of being put in default are not only that, in contracts to give, the thing, which is the object of the stipulation, is at the risk of the person in default; but in the cases hereinafter provided for it is a prerequisite to the recovery of damages and of profits and fruits, or to the rescission of the contract."

"In commutative contracts, where the reciprocal obligations are to be performed at the same time, or the one immediately after the other, the party who wishes to put the other in default, must, at the time and place expressed in, or implied by the agreement, offer or perform, as the contract requires, that which on his part was to be performed, otherwise the opposite party will not be legally put in default."

Plaintiff alleges that he did put defendant in default, without saying how; but, as a witness, after stating that an extension had been granted by defendant with whom he had frequent talks after September 10, with respect to carrying out the contract, testifies, page 4 of the testimony:

"I located Mr. C. in his office, and Mr. Johnson went along with me at the time. I asked Mr. C. again what he intended to do. Mr. C. told me he was figuring with some parties, and that they were to show up that evening some time, and he left me no results. I told Mr. C.. that time that I would give him until nine o'clock that evening to either take the stock of merchandise or I would consider the deal cancelled and I would open the store on the following morning."

Plaintiff's counsel argues that this was a putting in default and that the bringing of this suit was also. We cannot agree with this view. If this was an offer to perform, it was a verbal one made in the presence of only one witness.

Article 1911 of the Civil Code provides:

"The debtor may be put in default in three ways: By the term of the contract, by the act of the creditor, or by the operation of law.

"By the terms of the contract, when it specially provides that the party, failing to comply, shall be deemed to be in default by the mere act of his failure.

"By the act of the party, when at or after the time stitulated for the performance, he demands that it shall be carried into effect, which demand may be made, either by the commencement of a suit, by a demand in writing, by a. protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.

"By the operation of law. This takes place where the breach of the contract alone is by law declared to be equivalent to a default. The law having declared that the neglect to return a thing loaned for use, at a stipulated time, or the application of it to another use than the one for which it was lent, puts it at the risk of the borrower; this, without any act of the lender, puts the borrower in default, and forms an example of this part of the rule."

The suit spoken of in the article is not a suit for damages for a breach of the contract but a suit demanding its performance.

The contract does not provide that the party failing to comply with it shall be in default by the mere act of his failure; nor is it one of those in which the breach alone is by law declared equivalent to a default.

The defendant does not even allege, much less prove, a putting in default on his part, but relies on the fact that plaintiff was not, on September 10, 1924, ready to perform as putting an end to the contract and entitling him to the deposit.

But, as stated above, neither the contract nor the law provides that mere failure to perform constitutes such a default as is necessary for the recovery of damages.

The district judge condemned plaintiff to pay half the costs and the defendant half. Under the peculiar situation of this case, we think this proper. Both were claiming the whole thousand dollars and neither could get his five hundred dollars without a suit. Plaintiff recovered judgment for five hundred dollars but so did defendant. The bank, of course, being a mere stakeholder was properly relieved from the payment of any costs.

For these reasons, the judgment of the lower court is affirmed; plaintiff to pay the costs of the appeal.